E-filing

FILED

JUL 2 5 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

1   MICHAEL J. HADDAD (State Bar No. 189114)
    JULIA SHERWIN  (State Bar No. 189268)
2   GINA ALTOMARE (State Bar No. 273099)
    HADDAD & SHERWIN
3   505 Seventeenth Street
    Oakland, California  94612
4   Telephone: (510) 452-5500
    Fax: (510) 452-5510
5

6   Attorneys for Plaintiffs

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

                                                           ADR

10  ROGELIO SERRATO, DECEASED,          )   No: C11-03642 PSG
11  THROUGH HIS SUCCESSORS IN           )
    INTEREST, JULIAN SERRATO and        )   Hon.
12  ISRAEL SERRATO, minors, by and      )
    through their grandmother and Next  )   COMPLAINT FOR DAMAGES,
13  Friend, LISA MAGDALENO; and JULIAN  )   DECLARATORY AND
    SERRATO AND ISRAEL SERRATO, by      )   INJUNCTIVE RELIEF, AND
14  and through their Next Friend, LISA  )   DEMAND FOR JURY TRIAL
15  MAGDALENO, individually.            )
                                        )
16              Plaintiffs,             )
                                        )
17  vs.                                 )
                                        )
18  MONTEREY COUNTY, a public entity,   )
    SHERIFF SCOTT MILLER, individually  )
19  and in his official capacity; CAPTAIN )
    CHARLES MONARQUE, individually and  )
20  in his official capacity; COMMANDER  )
    KEVIN OAKLEY, individually; SERGEANT )
21  GARRETT SANDERS, individually;       )
    SERGEANT JOSEPH BANUELOS,            )
22  individually; SERGEANT RANDY         )
    RAGSAC, individually; DETECTIVE AL   )
23  MARTINEZ, individually; DEPUTY MARK  )
24  SIEVERS, individually, and DOES 1-10, )
    individually, jointly and severally.  )
25                                        )
                                          )
26              Defendants.               )
                                          )
27

28

COMPLAINT AND JURY DEMAND                                     1

Plaintiffs, by and through their attorneys, HADDAD & SHERWIN, for their Complaint against Defendants, state as follows:

## JURISDICTION

1.      This is a civil rights wrongful death/survival action arising from Defendants' use of excessive force against ROGELIO SERRATO, who was killed when the Monterey County Special Weapons and Tactics Team (SWAT) set fire to his home with a flash-bang stun grenade on January 5, 2011, in the City of Greenfield, Monterey County, California. This action is brought pursuant to 42 USC §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.  Jurisdiction is founded upon 28 USC §§ 1331 and 1343(a)(3) and (4), and the aforementioned statutory and constitutional provisions.  Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to 28 USC §1367 to hear and decide claims arising under state law.  The amount in controversy herein, excluding interest and costs, exceeds the minimum jurisdictional limit of this Court.

## INTRADISTRICT ASSIGNMENT

2.      A substantial part of the events and/or omissions complained of herein occurred in the City of Greenfield, Monterey County, California, and this action is properly assigned to the San Jose Division of the United States District Court for the Northern District of California.

## PARTIES AND PROCEDURE

3.      Plaintiff Lisa Magdaleno is the grandmother of decedent Rogelio Serrato's sons, Julian Serrato, born 4/19/2008, and Israel Serrato born 8/06/2009.   Lisa Magdaleno and her grandsons are residents of the same household in the State of California.  Plaintiff Lisa Magdaleno brings these claims pursuant to FRCivP 17(c) as Next Friend for her

grandsons, Julian and Israel Serrato, and in that capacity Lisa Magdaleno brings these claims individually for Julian and Israel Serrato and on the minors' behalf as successors in interest for the Estate of Rogelio Serrato, Deceased.

4.     Lisa Magdaleno, as Next Friend for Julian and Israel Serrato brings these claims pursuant to California Code of Civil Procedure sections 377.20 et seq. and 377.60 et seq. which provide for survival and wrongful death actions.  The claims of Julian Serrato, Israel Serrato, through their Next Friend, are also brought individually and on behalf of Rogelio Serrato, Deceased, on the basis of  42 USC §§ 1983 and 1988, the United States Constitution, and federal and state civil rights law.

5.     Defendant Monterey County is a public entity established by the laws and Constitution of the State of California, and owns, operates, manages, directs, and controls the Monterey County Sheriff's Office ("MCSO") which employs other defendants in this action.

6.     Defendant Sheriff Scott Miller ("Miller") at all material times was employed as Sheriff by Defendant Monterey County, and was acting within the course and scope of that employment. As Sheriff, Defendant Miller was a policy-making official for Monterey County with the power to make official and final policy for MCSO. Defendant Miller is being sued in his individual and official capacities.

7.     Defendant Captain Charles Monarque ("Monarque") at all material times was employed as a law enforcement officer by Defendant Monterey County, and was acting within the course and scope of that employment. As Captain and Acting Chief of the Enforcement Operations Bureau, Defendant Monarque was a policy-making official for the MCSO Enforcement Operations Bureau.  Defendant Monarque is being sued in his individual and official capacities.

8.    Defendant Commander Kevin Oakley ("Oakley") at all material times was employed as a law enforcement officer by Defendant Monterey County, and was acting within the course and scope of that employment. Defendant Oakley is being sued in his individual capacity.

9.    Defendant Sergeant Garrett Sanders ("Sanders") at all material times was employed as a law enforcement officer by Defendant Monterey County, and was acting within the course and scope of that employment. Defendant Sanders is being sued in his individual capacity.

10.  Defendant Sergeant Joseph Banuelos ("Banuelos") at all material times was employed as a law enforcement officer by Defendant Monterey County, and was acting within the course and scope of that employment. Defendant Banuelos is being sued in his individual capacity.

11.   Defendant Sergeant Randy Ragsac ("Ragsac") at all material times was employed as a law enforcement officer by Defendant Monterey County, and was acting within the course and scope of that employment. Defendant Ragsac is being sued in his individual capacity.

12.   Defendant Detective Al Martinez ("Martinez") at all material times was employed as a law enforcement officer by Defendant Monterey County, and was acting within the course and scope of that employment. Defendant Martinez is being sued in his individual capacity.. Defendant Sievers is being sued in his individual capacity.

13.   Defendant Deputy Mark Sievers ("Sievers") at all material times was employed as a law enforcement officer by Defendant Monterey County, and was acting within the course and scope of that employment

14.     The true names and capacities of Defendants sued herein as DOES 1-10 ("DOE Defendants") are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names, and Plaintiffs will seek leave to amend this complaint to show their true names and capacities when the same are ascertained. Each DOE Defendant was an employee/agent of Monterey County, the City of Monterey, or some other law enforcement agency, and at all material times acted within the course and scope of that relationship.

15.     Plaintiffs are informed and believe and thereon allege that each of the Defendants sued herein was intentionally, recklessly, wrongfully, negligently or otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Plaintiffs. Further, one or more DOE defendants was at all material times responsible for the hiring, training, supervision, and discipline of other defendants.

16.     Plaintiffs are informed and believe, and thereon allege, that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe, and thereon allege, that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter otherwise specifically alleged. At all material times, each Defendant was an integral participant and was jointly engaged in tortious activity, resulting in the deprivation of Plaintiffs' constitutional rights and other harm.

17.     The acts and omissions of all Defendants as set forth herein were at all material times pursuant to the actual customs, policies, practices and procedures of Monterey County and the Monterey County Sheriff's Office (MCSO).

18.     At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

19.     Each Plaintiff herein timely and properly filed tort claims pursuant to Cal. Gov. Code § 910 et seq., and this action is timely filed within all applicable statutes of limitation.

20.     This complaint may be pled in the alternative pursuant to FRCivP 8(d).

## GENERAL ALLEGATIONS

21.     Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

22.     This Complaint concerns the MCSO's violent and ultimately deadly raid on a private residence at 228 San Antonio Drive, Greenfield, CA on the morning of January 5, 2011.   MCSO Special Weapons and Tactics Team (SWAT) planned to assist the Monterey Police Department (MPD) with the service of a search warrant at the home of Mr. Serrato.   The warrant authorized MPD to search for evidence connected with a shooting that occurred at the Mucky Duck bar in Monterey four days earlier.   Rogelio Serrato was not in fact at the Mucky Duck on the night of the shooting and was in no way connected to that incident.   Neither MCSO, nor any other law enforcement agency had sought or obtained an arrest warrant for Mr. Serrato in connection with that shooting.   At all material times, Mr. Serrato was unarmed and Defendants had no particular information that he was armed.

23.     Nonetheless, Defendant Monarque recommended that SWAT be activated and informed Defendant Sheriff Miller of the mission.  Defendants Sanders, Banuelos, Oakley and Monarque formed and approved a tactical operations plan which included using a stun grenade to scare Mr. Serrato out of his home.

24.     At or around 9:23 a.m., MCSO SWAT members drove the "Bearcat," a military-combat style tactical transport, along with a large armored truck and several other SWAT vehicles to Mr. Serrato's home.  Approximately two-dozen SWAT members, armed with assault rifles and other automatic weapons, surrounded Mr. Serrato's home while a Hostage Negotiation Team (HNT) shouted at him with a "thunder-hailer" megaphone ordering him to surrender.

25.     Although Mr. Serrato did not respond to the thunder-hailing, statements by neighbors and relatives confirmed the SWAT members' belief that Mr. Serrato was inside the residence. Defendants also received information that Mr. Serrato may have been intoxicated, emotionally disturbed and unable to care for himself.

26.     Without provocation or just cause, Defendants Sanders, Oakley, and Monarque decided to launch a flash-bang stun grenade into Mr. Serrato's home.  Per earlier discussions, defendants planned to use the grenade not to secure the safety of the SWAT members during a dynamic entry, but as a "scare tactic" to frighten "the target" into exiting his home.  Mr. Serrato had not threatened the officers in any way.

27.     Defendant Sanders, who led the SWAT mission's tactical operations team, obtained final approval to use the grenade from Defendant Monarque and Defendant Oakley.  The "Break and Rake" team approached the front window of Mr. Serrato's home, whereupon Defendant Martinez broke the window with a wrecking tool and Deputy Sievers threw the grenade into the living room.  Defendant Banuelos, assistant team leader,

accompanied the team to supervise the Break and Rake operation. Defendants Ragsac and Banuelos also provided close cover for the Break and Rake team with their firearms. All Defendants were integral participants in this operation and use of the grenade.

28.    Defendant Sievers, acting in concert with his teammates, intentionally threw the grenade either onto, underneath, between or beside two extremely flammable polyurethane sofas.

29.    Within minutes, Defendants observed dark black smoke and flames shooting from the area where they had thrown the grenade.  Defendant Banuelos and other SWAT members heard Mr. Serrato's anguished cries and heard him breaking windows in the residence.  Defendant Banuelos shouted, "suspect!" and directed the SWAT members to retreat into the Bearcat.  Instead of attempting to extinguish the fire or rescue Mr. Serrato, the Defendants pointed assault rifles into Mr. Serrato's home while waiting for the fire department to arrive.

30.    MCSO SWAT delayed the Greenfield Fire Department from fighting the blaze because they had blocked the street entrance with a SWAT vehicle.  The fire department was not able to control the fire until more than 30 minutes had passed and Mr. Serrato had succumbed to the smoke.

31.    Fire Department efforts to resuscitate Mr. Serrato failed.  MCSO SWAT members' improper use of the flash-bang grenade and failure to control the ensuing fire and/or rescue Mr. Serrato caused Mr. Serrato's tragic and unnecessary death.

32.    On information and belief, Defendants Sievers and Martinez had started fires with flash-bang grenades on multiple prior occasions. Defendants knew or must have known that the improper use of a flash-bang grenade is likely to cause severe injury and/or death.

33.     Defendants failed to give any warning to Mr. Serrato before launching an incendiary device into his home, even though a warning would have been feasible and proper.

34.     Defendants failed to carefully consider alternatives to using the grenade.

35.     Defendants' use of the flash-bang stun grenade as a scare tactic was contrary to its intended purpose as a distraction device.  By throwing a grenade into a home without immediately attempting a dynamic entry, Defendants violated generally accepted law enforcement standards and increased the risk of death or injury to the inhabitants.

36.     Defendants failed to follow their training, law enforcement standards, and the manufacturer's instructions and warnings, including but not limited to tossing the grenade where it would be trapped between two extremely flammable polyurethane sofas.

37.     At the time that Defendant Sievers launched the grenade, Mr. Serrato did not pose a significant and immediate threat of death or serious physical injury to Defendants or to anyone else.

38.     Mr. Serrato, who was unarmed and in no way connected to the incident that Police were investigating, never displayed any signs of aggression or threatened any officer.  He exhibited only panic and fear. The use of deadly force, including the use of the grenade as described herein, was not justified or lawful under the circumstances.

39.     Alternatively, or concurrently, the Defendants' own excessive and unreasonable actions created a risk of harm to Mr. Serrato, created the situation in which Defendants decided to use force, and caused an escalation of events leading to use of the flash-bang grenade and the fire that claimed Mr. Serrato's life.

40.   Defendants' conduct herein, including but not limited to their decision(s) to use excessive and unnecessary force to execute the search warrant, their ill-planned and unjustifiable use of the flash-bang grenade, the reckless and improper manner in which they deployed the flash-bang, and their failure to enter the home, attempt to extinguish the fire they started and/or rescue Mr. Serrato, was contrary to generally accepted, reasonable law enforcement procedures and tactics and caused the wrongful death of Mr. Serrato.

41.   At all material times, and alternatively, the actions and omissions of each defendant were intentional, wanton and/or willful, conscience shocking, reckless, malicious, deliberately indifferent to Plaintiffs' rights, done with actual malice, grossly negligent, negligent and objectively unreasonable.

42.   As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiffs sustained the following injuries and damages, past and future, among others:

    a.    Wrongful death of Mr. Serrato;

    b.    Hospital and medical expenses;

    c.    Coroner's fees, funeral and burial expenses;

    d.    Loss of familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support;

    e.    Loss of economic support;

    f.    Violation of constitutional rights;

    g.    Mr. Serrato's loss of life, pursuant to federal civil rights law;

    h.    Mr. Serrato's conscious pain and suffering, pursuant to federal civil rights law;

    i.    All damages and penalties recoverable under 42 USC §§ 1983 and 1988, and as otherwise allowed under California and United States statutes, codes, and common law.

**COUNT ONE**
**-- 42 USC §1983 --**
**ALL PLAINTIFFS AGAINST DEFENDANTS MILLER, MONARQUE, OAKLEY,**
**SANDERS, BANUELOS, RAGSAC, MARTINEZ, SIEVERS, AND DOES 1-10**

43.    Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

44.    By the actions and omissions described above, Defendants Miller, Monarque, Oakley, Sanders, Banuelos, Ragsac, Martinez, Sievers and DOES 1-10 violated 42 USC §1983, depriving Plaintiffs of the following clearly-established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendments to U.S. Constitution:

  a.    The right to be free from unreasonable searches and seizures as secured by the Fourth and Fourteenth Amendments;

  b.    The right to be free from excessive and unreasonable force in the course of search or seizure as secured by the Fourth and Fourteenth Amendments;

  c.    The right to be free from the use of unlawful deadly force as secured by the Fourth and Fourteenth Amendments;

  d.    The right to be free of unlawful, reckless, deliberately indifferent, and conscience shocking deadly force as secured by the Fourteenth Amendment;

  e.    The right to be free from deprivation of life without substantive due process and from state created danger as secured by the Fourteenth Amendment;

  f.    The right to be free from wrongful government interference with familial relationships, and Plaintiffs' right to companionship, society and support of each other, as secured by the First, Fourth and Fourteenth Amendments, and to the extent secured by California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq.

45.    Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs of rights described herein, knowingly, maliciously, and with conscious and reckless

COMPLAINT AND JURY DEMAND                                                                11

1  disregard for whether the rights and safety of Plaintiffs (individually and on behalf of Mr.

2  Serrato) and others would be violated by their acts and/or omissions.

3       46.    As a direct and proximate result of Defendants' acts and/or omissions as set

4  forth above, Plaintiffs sustained injuries and damages as set forth at paragraph 42, above.

5       47.    The conduct of Defendants Miller, Monarque, Oakley, Sanders, Banuelos,

6  Ragsac, Martinez, Sievers and DOES 1-10 in their individual capacities, entitles Plaintiffs

7

8  to punitive damages and penalties allowable under 42 USC §1983 and Cal. Code of Civil

9  Procedure § 377.20 et seq.  Plaintiffs do not seek punitive damages against municipal

10 Defendants.

11      48.    Plaintiffs are also entitled to reasonable costs and attorney fees under 42

12 USC §1988 and applicable California codes and laws.

13                          **COUNT TWO**
                      **- 42 USC §1983 –**
14    **ALL PLAINTIFFS AGAINST DEFENDANTS MONTEREY COUNTY,**
   **SHERIFF SCOTT MILLER, CAPTAIN CHARLES MONARQUE, AND DOES 1-10**
15

16      49.    Plaintiffs reallege each and every paragraph in this complaint as if fully set

17 forth here.

18      50.    The unconstitutional actions and/or omissions of Defendants Monterey

19 County, Sheriff Scott Miller, and Captain Charles Monarque, as well as other officers

20 employed by or acting on behalf of Monterey County, on information and belief, were

21 pursuant to the following customs, policies, practices, and/or procedures of the MCSO,

22 stated in the alternative, which were directed, encouraged, allowed, and/or ratified by

23 policy making officers for Monterey County:

24

25       a.   To use or tolerate the use of excessive and/or unjustified force, in
              particular during the search of residential dwellings;

26

27       b.   To misuse or tolerate the improper and dangerous misuse of flash-
              bang grenades;

28

c.  To create unnecessary danger and risk of serious harm or death, with deliberate indifference, to occupants of residences being searched by law enforcement officers;

d.  To cover-up violations of constitutional rights by failing to properly investigate and/or evaluate officer involved shootings, by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police activity, and by allowing, tolerating, and/or encouraging police officers to: file false police reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and obstruct and/or interfere with investigations of unconstitutional or unlawful police conduct, by withholding and/or concealing material information;

e.  To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and police department personnel, whereby an officer or member of the department does not provide adverse information against a fellow officer or member of the department; and,

f.  To use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints of officer misconduct.

51.  Defendants Monterey County, Sheriff Miller, and Captain Monarque failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants Captain Monarque, Commander Oakley, Sergeant Sanders, Sergeant Banuelos, Detective Martinez and Deputy Sievers and other MCSO officers, with deliberate indifference to Plaintiffs' constitutional rights, which were thereby violated as described above.

52.  The unconstitutional actions and/or omissions of Defendants and other MCSO officers, as described above, were approved, tolerated and/or ratified by policy making officers for the MCSO.  Plaintiffs are informed and believe, and thereupon allege, that Defendant Sheriff Miller was informed about the SWAT raid before it occurred and that the details of this incident have since been revealed to the authorized policy makers within Monterey County and MCSO, and that such policy makers have direct knowledge of the

1  fact that throwing a flash-bang stun grenade into Mr. Serrato's home was not justified

2  under the circumstances, but rather represented an unconstitutional display of

3  unreasonable, excessive and deadly force.  Notwithstanding this knowledge, the

4  authorized policy makers within Monterey County and MCSO have labeled Mr. Serrato's

5  death "accidental,"  have approved of Defendants' tactical operation, and have made a

6  deliberate choice to endorse the SWAT members' excessive use of force.  By so doing,

7  the authorized policy makers within Monterey County and MCSO have shown affirmative

8  agreement with the individual defendant officers' actions, and have ratified the

9  unconstitutional acts of the individual defendant officers.

10

11      53.    The aforementioned customs, policies, practices, and procedures, the

12  failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate,

13  investigate, and discipline, as well as the unconstitutional orders, approvals, ratification

14  and toleration of wrongful conduct by Defendants Monterey County, Sheriff Miller, and

15  Bureau Captain Charles Monarque, were a moving force and/or a proximate cause of the

16  deprivations of Plaintiffs' clearly-established and well-settled constitutional rights in

17  violation of 42 USC §1983, as more fully set forth in paragraph 44, above.

18      54.    Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs

19  of rights described herein, knowingly, maliciously, and with conscious and reckless

20  disregard for whether the rights and safety of Plaintiffs and others would be violated by

21  their acts and/or omissions.

22      55.    As a direct and proximate result of the unconstitutional actions, omissions,

23  customs, policies, practices and procedures of Defendants, Plaintiffs sustained serious

24  and permanent injuries and are entitled to damages, penalties, costs and attorney fees as

set forth in paragraphs 45-48, above, including punitive damages against Defendants Miller and Monarque.

### COUNT THREE
### -- VIOLATION OF CIVIL CODE §52.1 --
### ALL PLAINTIFFS AGAINST ALL DEFENDANTS

56.     Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

57.     By their acts, omissions, customs, and policies, each Defendant acting in concert/conspiracy, and by threats, intimidation, or coercion, as described above, violated Plaintiffs' rights under California Civil Code §52.1, and the following clearly-established rights under the United States Constitution and the California Constitution:

a.  The right to be free from unreasonable searches and seizures as secured by the Fourth and Fourteenth Amendments;

b.  The right to be free from excessive and unreasonable force in the course of search or seizure as secured by the Fourth and Fourteenth Amendments;

c.  The right to be free from the unreasonable use of deadly force as secured by the Fourth and Fourteenth Amendments;

d.  The right to be free of unlawful, reckless, deliberately indifferent, and conscience shocking deadly force as secured by the Fourteenth Amendment;

e.  The right to be free from deprivation of life without substantive due process and from state created danger as secured by the Fourteenth Amendment;

f.  The right to be free from wrongful government interference with familial relationships, and Plaintiffs' right to companionship and society with each other, as secured by the First, Fourth and Fourteenth Amendments;

g.  The right to enjoy and defend life and liberty, acquire, possess and protect property, and pursue and obtain safety, happiness and privacy, as secured by the California Constitution, Article 1, Section 1;

h. The right to life, liberty and property and not to be deprived of those without due process of law as secured by the California Constitution, Article 1, Section 7;

i. The right to be free from unlawful and unreasonable seizure of one's person, including the right to be free from unreasonable or excessive deadly force, as secured by the California Constitution, Article 1, Section 13;

j. The right to protection from bodily restraint, harm, or personal insult, as secured by Cal. Civil Code § 43.

58.     As a direct and proximate result of Defendants' violation of California Civil Code §52.1 and of Plaintiffs' rights under the United States and California Constitutions, Plaintiffs sustained injuries and damages, and against each and every Defendant are entitled to relief as set forth above at  paragraphs 45-48, including punitive damages against Defendants Miller, Monarque, Oakley,  Sanders, Banuelos, Sergeant Ragsac, Detective Martinez, Deputy Sievers and DOES 1-10 in their individual capacities, including all damages and penalties allowed by California Civil Code §§ 52, 52.1, and California law, not limited to costs, attorneys fees, and civil penalties.

**COUNT FOUR**
**-- NEGLIGENCE; PERSONAL INJURIES --**
**ALL PLAINTIFFS AGAINST ALL DEFENDANTS**

59.     Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

60.     At all times, each Defendant owed Plaintiffs the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

61.     At all times, each Defendant owed Plaintiffs the duty to act with reasonable care.

62.     These general duties of reasonable care and due care owed to Plaintiffs by all Defendants include but are not limited to the following specific obligations:

a.     to refrain from using excessive and/or unreasonable force against Mr. Serrato;

b.     to refrain from unreasonably creating the situation where force, including but not limited to deadly force, is used;

c.     to refrain from unreasonably creating danger or increasing Mr. Serrato's peril or risk of harm;

d.     to refrain from abusing their authority granted them by law;

e.     to refrain from violating Plaintiffs' rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

63.     Additionally, these general duties of reasonable care and due care owed to Plaintiffs by Defendants include but are not limited to the following specific obligations:

a.     to properly and adequately hire, investigate, train, supervise, monitor, evaluate, and discipline their employees, agents, and/or law enforcement officers to ensure that those employees/agents/officers act at all times in the public interest and in conformance with law;

b.     to make, enforce, and at all times act in conformance with policies and customs that are lawful and protective of individual rights, including Plaintiffs'.

c.     to refrain from making, enforcing, and/or tolerating the wrongful policies and customs set forth at paragraph 50, above.

64.     Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs.

65.     As a direct and proximate result of Defendants' negligence, Plaintiffs sustained injuries and damages, and against each and every Defendant are entitled to relief as set forth above at paragraphs 45-48, including punitive damages against Defendants Miller, Monarque, Oakley, Sanders, Banuelos, Ragsac, Martinez, Sievers and DOES 1-10 in their individual capacities.

WHEREFORE, Plaintiffs respectfully request the following relief against each and every Defendant herein, jointly and severally:

    a.    compensatory and exemplary damages in an amount according to proof and which is fair, just and reasonable;

    b.    punitive damages under 42 USC §1983 and California law in an amount according to proof and which is fair, just, and reasonable;

    c.    all other damages, penalties, costs, interest, and attorney fees as allowed by 42 USC §§ 1983 and 1988, Cal. Code of Civ. Proc. §§ 377.20 et seq., 377.60 et seq., 1021.5, Cal. Civil Code §§ 52 et seq., 52.1, and as otherwise may be allowed by California and/or federal law;

    d.    Injunctive relief, including but not limited to the following:

        i.    an order prohibiting Defendants and their police officers from unlawfully interfering with the rights of Plaintiffs and others to be free from unreasonable searches and seizures and excessive and unreasonable force;

        ii.    an order requiring Defendants to institute and enforce appropriate and lawful policies and procedures for the safe use of flash-bang grenades;

        iii.    an order prohibiting Defendants and their police officers from engaging in the "code of silence" as may be supported by the evidence in this case;

        iv.    an order requiring Defendants to train all MCSO SWAT officers concerning generally accepted and proper tactics and procedures for the use of deadly force including the use of flash-bang stun grenades and this Court's orders concerning the issues raised in injunctive relief requests i-iii, above;

        v.    an order effecting a moratorium on the use of flash-bang grenades by MSCO officers until safe practices and procedures are established for their use.

    e.    such other and further relief as this Court may deem appropriate.

1   DATED:  July 25, 2011                    HADDAD & SHERWIN

2

3                                            /s/ Michael J. Haddad
                                             MICHAEL J. HADDAD
4                                            Attorneys for Plaintiffs

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### JURY DEMAND

2

Plaintiffs hereby request a trial by jury.

3

4

DATED:  July 25, 2011

5

6                                         HADDAD & SHERWIN

7

8                                         /s/   Michael J. Haddad
                                          MICHAEL J. HADDAD
9                                         Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28